# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

*Plaintiff*,

v.

HAMILTON FOX, *et al.*,

*Defendants*.

Civil Action No. 18-1579 (RDM)

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Request for Voluntary Recusal.  *See* Dkt. 4.  For the reasons below, the Court will **DENY** the request.

On July 3, 2018, Plaintiff Larry Klayman filed the present action against four members of the District of Columbia Office of Disciplinary Counsel ("ODC") and the ODC itself.  Dkt. 1 at 1.  He alleges that Defendants "intentionally violated [his] statutory, constitutional[,] and other rights due to [his] political beliefs, public interest activism, and gender, pursuant to their own individual biases, prejudices, political views, loyalties, and allegiances."  *Id.* at 2 (Compl. ¶ 1).  This deprivation of rights purportedly occurred through the ODC's investigation of an ethics complaint, which Klayman argues was motivated in large part by his outspoken advocacy for conservative causes.  *See, e.g., id.* at 9–10 (Compl. ¶¶ 41–46).  Relevant here, he supports that argument by reference to the fact that two of the individual defendants "donated significant sums of monies to Hillary Clinton and Barack Obama as well as other liberal Democrats."  *Id.* at 9 (Compl. ¶ 42); *see also id.* at 19–20 (Compl. ¶ 92) ("This bias and thus mindset is clearly present with regard to the Defendants herein, several of whom have donated to politicians and political

candidates who support these causes and who oppose and have vilified the President publically.").

Klayman now asks that I recuse myself on the basis of past political activity and government service, all of which occurred before I was appointed to the bench. In particular, Klayman references (1) political contributions I made between 1999 and 2013; (2) my appointment to a position in the Department of Justice by President Clinton; (3) my volunteer work on political campaigns; and (4) political contributions made by others from the law firm at which I was a partner before my appointment. *See* Dkt. 4 at 1–2. Plaintiff argues that these actions, which he asserts evince "a noticeable lack of Republican or conservative interests," *id.* at 2, create "the appearance of non-partiality," *id.* at 4. Finally, Plaintiff observes that "regrettably we live in a highly polarized world which is dividing the nation to degree never before experienced by the American people." *Id.* at 3.

The Court understands Plaintiff's concern regarding polarization. It does not share his view, however, that the remedy for such polarization is for judges to accept the suggestion that the process of judging has anything to do with the past political activity or public service of judges. It does not. The statute governing the disqualification of federal judges, 28 U.S.C. § 455, requires recusal "in any proceeding in which [a judge's] impartiality might reasonably be questioned," *id.* "It is, of course, 'an inescapable part of our system of government that judges are drawn primarily from lawyers who have participated in public and political affairs.'" *Higganbotham v. Okla. ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 645 (10th Cir. 2003) (quoting *United States v. Alabama*, 828 F.2d 1532, 1543 (11th Cir. 1987)). Judges, however, "separate themselves from politics when going on the bench," *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998), and, as a result, "[t]he fact of past political activity

2

alone will rarely require recusal," *Higganbotham*, 328 F.3d at 645. In a case such as this, recusal is not only unwarranted, *see In re Mason*, 916 F.2d 384, 387 (7th Cir. 1990) (observing that prior campaign contributions do not create an appearance of impropriety); *id.* (noting cases in which "sponsorship and other indicia of political support in bygone days" were held "not [to] disqualify a judge"), but would foster the erroneous—and corrosive—perception that judicial decisions are based on politics, rather than the relevant law and facts.

Although a judge must carefully consider whether his or her past associations and activities create the appearance of impartiality, "a judge has as much obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true." *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994). This is such a case.

The motion is, accordingly, **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: July 19, 2018